1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| ALBERT J. GABRIEL, | ) Case No. CV 08-7717-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

17
18

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

19   / / /
20   / / /
21   / / /

22

**I.**

23
24
25
26
27
28

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

[2]  As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1

**DISPUTED ISSUES**

2   As reflected in the Joint Stipulation, the sole disputed issue which Plaintiff

3   raises as the ground for reversal and/or remand is whether the Administrative Law

4   Judge ("ALJ") properly considered the treating physician's opinion.  (JS at 4.)

5   **II.**

6   **STANDARD OF REVIEW**

7   Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

8   to determine whether the Commissioner's findings are supported by substantial

9   evidence and whether the proper legal standards were applied.  DeLorme v.

10  Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

11  than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

12  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

13  Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

14  evidence is "such relevant evidence as a reasonable mind might accept as adequate

15  to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The

16  Court must review the record as a whole and consider adverse as well as

17  supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

18  Where evidence is susceptible of more than one rational interpretation, the

19  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452

20  (9th Cir. 1984).

21  **III.**

22  **DISCUSSION**

23  **The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician.**

24  Plaintiff contends that the ALJ erroneously rejected the opinion of his

25  treating physician, Dr. Carolyn Mohr.  (JS at 4-13, 21-23.)   The Court disagrees.

26  **1.    Applicable Law.**

27  It is well-established in the Ninth Circuit that a treating physician's opinions

28

2

1    are entitled to special weight, because a treating physician is employed to cure and

2    has a greater opportunity to know and observe the patient as an individual.

3    McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating

4    physician's opinion is not, however, necessarily conclusive as to either a physical

5    condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747,

6    751 (9th Cir. 1989). The weight given a treating physician's opinion depends on

7    whether it is supported by sufficient medical data and is consistent with other

8    evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's

9    opinion is uncontroverted by another doctor, it may be rejected only for "clear and

10   convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v.

11   Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion

12   is controverted, it may be rejected only if the ALJ makes findings setting forth

13   specific and legitimate reasons that are based on the substantial evidence of record.

14   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at

15   751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

16         However, the Ninth Circuit also has held that "[t]he ALJ need not accept the

17   opinion of any physician, including a treating physician, if that opinion is brief,

18   conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at

19   957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

20   1992). A treating or examining physician's opinion based on the plaintiff's own

21   complaints may be disregarded if the plaintiff's complaints have been properly

22   discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

23   1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

24   v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion

25   of the claimant's treating physician is contradicted, and the opinion of a

26   nontreating source is based on independent clinical findings that differ from those

27   of the treating physician, the opinion of the nontreating source may itself be

28

3

substantial evidence; it is then solely the province of the ALJ to resolve the conflict." <u>Andrews</u>, 53 F.3d at 1041; <u>Magallanes</u>, 881 F.2d at 751; <u>Miller v. Heckler</u>, 770 F.2d 845, 849 (9th Cir. 1985).

### 2.   **Analysis.**

Here, Dr. Mohr completed a mental status examination on March 18, 2008, and opined that Plaintiff could not perform "low stress jobs" as a result of his depression and anxiety.  (AR at 16, 255-59.)  Dr. Mohr also indicated that Plaintiff had no useful ability to function in many work-related areas as follows:  (i) maintain regular attendance and be punctual within customary, usually strict tolerances; (ii) sustain an ordinary routine without special supervision; (iii) work in coordination with or proximity to others without being unduly distracted; (iv) complete a normal workday and workweek without interruptions from psychologically based symptoms; (v) perform at a consistent pace without an unreasonable number and length of rest periods; and (vi) deal with normal work stress.  (<u>Id.</u> at 257.)  After summarizing and considering Dr. Mohr's findings, the ALJ determined it was not entitled to controlling weight and provided specific and legitimate reasons for discounting the opinion.  (<u>Id.</u> at 15-17.)

The ALJ relied upon the medical opinions of two consultative physicians to discount the opinion of Dr. Mohr.  (<u>Id.</u>)  On November 27, 2006, Dr. Edward Ritvo conducted a complete psychiatric evaluation on Plaintiff.  (AR at 241-19.)  Dr. Ritvo observed Plaintiff to be coherent, organized, non-delusional, alert, and oriented.  (<u>Id.</u> at 216-17.)  Based on his evaluation, Dr. Ritvo stated, "There is no bizarre or psychotic thought content.  There is no suicidal, homicidal, or paranoid ideation during the interview."  (<u>Id.</u> at 216.)  As to Plaintiff's functional limitations, Dr. Ritvo concluded that Plaintiff has "no impairment in [his] ability to understand, remember, or complete simple commands."  (<u>Id.</u> at 218.)  Dr. Ritvo also concluded that Plaintiff has mild impairments in the following abilities:  (i)

ability to understand, remember, or complete complex commands; (ii) ability to interact appropriately with supervisors, coworkers or the public; (iii) ability to comply with job rules such as safety and attendance; (iv) ability to respond to change in the normal workplace setting; and (v) ability to maintain persistence and pace in a normal workplace setting.  (Id.)  Dr. Ritvo also assessed Plaintiff to have a Global Assessment of Functioning ("GAF")[3] score of 60, or having "[m]oderate symptoms . . . OR moderate difficulty in social, occupational, and school functioning . . . ."  (Id.); DSM-IV at 34.  Dr. Ritvo's evaluation, based on independent clinical findings, suggests a higher functioning of mental capacity than Dr. Mohr found.

On January 5, 2007, Dr. Mark Salib conducted a psychiatric review of Plaintiff.  (AR at 221-230.)  Dr. Salib determined Plaintiff suffered from psychosis, not otherwise specified.  (Id. at 223.)  As to Plaintiff's functional limitations, Dr. Salib concluded that Plaintiff had mild difficulties in maintaining social functioning and maintaining concentration, persistence, and pace.  (Id. at 229.)  Here again, Dr. Salib, based upon independent clinical findings, assessed a greater level of mental functioning than Dr. Mohr's assessment.  Thus, the opinions of the consultative physicians constitute substantial evidence since they were based on independent clinical findings, and any conflict between these findings and Dr. Mohr's opinion was for the ALJ to resolve.  See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).

---

[3]  GAF scores reflect the "clinician's judgment of the individual's overall level of functioning . . . [including] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome."  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000).

The ALJ also relied upon the testimony of the medical expert to discount Dr. Mohr's assessment. (AR at 16-17, 34-36.) The ALJ gave more weight to the testimony of the medical expert, Dr. Agler, "who found the claimant to have mild to moderate limitations in his ability to perform complex work and in his social limitations." (Id. at 16-17.) The record supports the ALJ's finding. (Id. at 34-36.) At the hearing, Dr. Agler testified:

> I don't know that [Plaintiff] has any severe limitations. The records suggest to me that he could do at least simple work without problems with contact with people either the public, fellow workers, or supervisors. And I suspect that he could handle somewhat complex work. What he can't handle is work that's physically demanding.

(Id. at 35.) Dr. Agler, like the consultative physicians, opined that Plaintiff had a greater level of mental functioning than Dr. Mohr's assessment. The opinion of Dr. Agler constitutes substantial evidence since it also was based on independent clinical findings, and any conflict between this opinion and Dr. Mohr's opinion was for the ALJ to resolve. See Andrews, 53 F.3d at 1041.

As to Dr. Mohr's treatment records, the ALJ found the records did not substantiate any disabling mental conditions. The ALJ provided:

> I give little weight to the assessment of the treatment source, because the marked limitations described in that opinion are not supported by the treating records, which consistently rate the claimant with GAF scores of 55 to 60, indicating mild to moderate limitations.

(AR at 17.) The record supports the ALJ's finding. (AR at 242, 244, 246, 255.) The ALJ also noted that Dr. Mohr's examinations of Plaintiff on September 21, 2006, and November 14, 2007, revealed Plaintiff's mental status as essentially normal. (Id. at 15-16, 244, 246.) Further, Dr. Mohr provided Plaintiff with a conservative treatment plan, consisting of prescriptions for psychiatric medication

and referrals to counseling groups, with no indication of hospitalization, intensive treatment, or other forms of treatment.  (Id. at 15-16, 239-59.)  Moreover, Dr. Mohr's progress reports, with the exception of the forms discussed previously, provide no limitations as to Plaintiff's functional abilities.  (Id. at 239-254.)  Thus, the ALJ properly discounted Dr. Mohr's finding as it was inadequately supported by the clinical findings.  Thomas, 278 F.3d at 957; see also Matney, 981 F.2d at 1019.

Finally, the ALJ rejected Plaintiff's credibility, thereby discounting Dr. Mohr's opinions based upon Plaintiff's complaints.[4]  (AR at 15-17); see also Morgan, 169 F.3d at 602; Sandgathe, 108 F.3d at 980 (9th Cir. 1997); Andrews, 53 F.3d 1043.  The ALJ stated:

> Moreover, I note that the claimant's visits to Dr. Mohr were few and far between (4 visits in a year and half), and appeared to take place just after he applied for disability benefits, and then just prior to his disability hearings.  This suggests that he saw Dr. Mohr primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling psychiatric symptoms.  I also note that is no evidence that he ever followed up on Dr. Mohr's referral to a PTSD group which also suggest that the symptoms may not have been as serious as alleged.

(AR at 17.)  The ALJ also rejected Plaintiff's credibility based upon his inconsistent statements, daily activities, and a lack of supporting medical evidence.  (Id. at 15-17.)  Thus, the ALJ properly rejected Plaintiff's credibility by his specific finding stating clear and convincing reasons to reject his credibility.  See

---

[4]  Notably, Plaintiff does not dispute the ALJ's credibility finding.  The Court, therefore, declines to discuss whether the ALJ's credibility finding was proper.

Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991); Thomas, 278 F.3d at 958-59.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to discount Dr. Mohr's opinion. Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.  Thus, there was no error.

# IV.

# **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated:  November 3, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge